IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| IN THE MATTER | ) | CIVIL NO. 10-00230 SOM/KSC |
| | ) | |
| of | ) | ORDER GRANTING CLAIMANTS' |
| | ) | MOTION TO DISMISS FOR LACK OF |
| THE COMPLAINT OF CATAMARAN | ) | SUBJECT MATTER JURISDICTION |
| HOLDINGS, LLC, a Nevada | ) | |
| Limited Liability Company, as | ) | |
| owner, and MARINE CHARTERS, | ) | |
| INC., a Hawaii Corporation, | ) | |
| as owner *pro hace vice*, of | ) | |
| the M/V PRIDE OF MAUI, O.N. | ) | |
| 983360, for the Exoneration | ) | |
| from or Limitation of | ) | |
| Liability. | ) | |

_____

ORDER GRANTING CLAIMANTS' MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

I.      INTRODUCTION.

On April 21, 2010, Catamaran Holdings, LLC, and Marine

Charters, Inc., owners of the M/V Pride of Maui, filed a

Complaint for the Exoneration from or Limitation of Liability.

Plaintiffs bring this action under 28 U.S.C. § 1333, the

admiralty and maritime jurisdiction statute.  Claimants Mildred

Winham and Bruce Winham move to dismiss the action, arguing that

the court lacks federal subject matter jurisdiction over the

case.  The court agrees and grants the motion to dismiss.

II.     FACTUAL BACKGROUND.

This action involves a motor vehicle accident that

occurred on or about April 2, 2009, in Ma'alaea Harbor, Maui,

Hawaii.  On the date of the incident, Larry Doty was employed by

Marine Charters, Inc., as a crew member and dive master.  See
Claimants' Mot. Dismiss 5, ECF No. 24.  According to his
deposition, Doty typically started his the day at the North Pier,
where the M/V Pride of Maui, O.N. 983360 ("vessel"), was located.
See Depo. of Larry Gene Doty, Jr. 67, Mot. to Dismiss, Ex. C
("Doty Depo.").  He usually tied the boat to the dock, got on the
vessel, washed the bow and window, and helped the scuba
instructor with scuba equipment.  See id.  After these
activities, the vessel would move from the North Pier to the
South Pier, where additional supplies and equipment were loaded,
and crewmembers and passengers boarded the vessel.  See Opp'n 6-
7, ECF No. 50.  Typically, Doty and the other crew members rode
the company van from the North Pier to the South Pier.  See Doty
Depo. 71.  This movement allegedly facilitated parking and
allowed crew members to leave when the vessel's voyage ended.
See Opp'n 8.  At the South Pier, Doty was typically responsible
for grabbing scuba tanks, loading equipment, and collecting guest
boarding passes.  See Doty Depo. 72-73.

          On or about April 2, 2009, Doty drove his truck to the
Ma'alaea Harbor to report to work.  See id. at 76.  He parked his
car in the North Pier parking lot and boarded the vessel to tie
off the boat and wash the deck.  See id. at 77-78.  Afterwards,
Doty drove his own truck instead of using the company van to go
from the North Pier to the South Pier.  See id. at 80, 90-93.

Doty admits that the company van was available to him and that he saw it in the parking lot on the day of the incident.  Id. at 80.

Doty's truck hit Mildred Winham while she was walking in the South Pier parking lot.  See Claimants' Mot. Dismiss 2. The Winhams were making their way along the South Pier to board a passenger excursion vessel operated by Pacific Whale Foundation. See Opp'n 1-2.  Mildred Winham allegedly suffered serious and permanent injuries to, among other things, her leg, foot, and shoulders.  See Answer 9, ECF No. 15.  Bruce Winham, Mildred Winham's spouse, allegedly sustained mental and other injuries as a result of the incident.  See Am. Compl. ¶ 6, ECF No. 6.

III.     PROCEDURAL HISTORY.

This incident has given rise to more than one legal action.  On May 5, 2009, the Winhams filed a lawsuit against Larry Doty in the Circuit Court of the Second Circuit, State of Hawaii, for damages allegedly arising from the incident.  See Am. Compl. ¶ 11, ECF No. 6.  On July 23, 2009, Doty filed for Title 11 bankruptcy in United States Bankruptcy Court, District of Hawaii.  See Claimants' Mot. Dismiss 3-4, ECF No. 24.  On October 26, 2009, the Winhams filed an Amended Complaint to add Marine Charters, Inc., as a defendant to the lawsuit, and asserted various claims such as respondeat superior and negligence.  See ECF No. 24-3.

On November 23, 2009, Plaintiffs filed their Answer and denied the Winhams' allegation that Doty was acting within the scope of his employment when the incident occurred.  See Answer ¶ 13, ECF No. 24-6.  On April 8, 2010, the Winhams filed another Amended Complaint to add Pacific Whale as a Defendant.  See ECF No. 50-1.

On November 25, 2009, Plaintiffs filed a Notice of Removal, removing the case from the Second Circuit Court to this court on the basis of admiralty or maritime jurisdiction.  See ECF No. 24-7.  The Winhams filed a Motion to Remand to State Court on the basis that the federal court lacked subject matter jurisdiction, as the tort case filed in state court was not an admiralty or maritime case.  See id.  The Winhams and Plaintiffs subsequently entered into a Stipulation to Remand to State Court, which this court approved and filed.  See ECF No. 24-9.

Initiating a separate legal action, Plaintiffs filed the present Complaint for Exoneration from or Limitation of Liability.  See Compl., ECF No. 1.  They filed an Amended Complaint on April 30, 2010.  See Am. Compl., ECF No. 6.  On July 14, 2010, the Winhams filed their Answer and incorporated by reference the allegations and claims from their state-court action.  See ECF No. 50-2.  On August 30, 2010, Pacific Whale filed its Answer and asserted claims against Plaintiffs for equitable indemnity, contribution, and declaratory relief.  See

4

Opp'n 12.  On September 13, 2010, Plaintiffs filed a Counterclaim against Pacific Whale, seeking to shift any liability onto them. See Opp'n 12-13.

In the present motion, the Winhams argue that Plaintiffs's Complaint must be dismissed because admiralty jurisdiction is lacking.

IV.      STANDARD OF REVIEW.

A court's subject matter jurisdiction may be challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

A jurisdictional challenge may be facial, relying on the pleadings.  When examining a facial attack on subject matter jurisdiction under Rule 12(b)(1), courts assume the plaintiffs' factual allegations to be true and draw all reasonable inferences in the plaintiffs' favor.  Doe v. See, 557 F.3d 1066, 1073 (9th Cir. 2009).

A jurisdictional challenge may alternatively be based on facts submitted to the court that go beyond the pleadings.  On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence

of jurisdiction." <u>McCarthy v. United States</u>, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party [converts] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." <u>Savage v. Glendale Union High Sch.</u>, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

"The requirement that the nonmoving party present evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." <u>Trentacosta v. Frontier Pac. Aircraft Indus., Inc.</u>, 813 F.2d 1553, 1559 (9th Cir. 1987). When ruling on a jurisdictional motion involving factual issues that also go to the merits, the moving party "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Casumpang v. Int'l Longshoremen's & Warehousemen's Union</u>, 269 F.3d 1042, 1060-61 (9th Cir. 2001).

V.      <u>ANALYSIS.</u>

The United States Constitution grants original jurisdiction to federal courts to hear admiralty claims.

See U.S. Const. art. III, § 2, cl. 1.  This jurisdiction,
codified at 28 U.S.C. § 1333(1), allows the filing of claims
related to maritime torts and maritime contracts.

Plaintiffs have filed this action under the Limitation
of Liability Act ("LOLA"), which provides that "the liability of
the owner of a vessel for any claim, debt, or liability . . .
shall not exceed the value of the vessel and pending freight."
See 46 U.S.C. § 30505(a).  The owner of a vessel may bring a
civil action in a district court of the United States for
limitation of liability.  46 U.S.C. § 30511(a).  Under Rule F(1)
of the Supplemental Rules for Admiralty or Maritime Claims and
Asset Forfeiture Actions, a vessel owner must file a complaint in
district court within six months after receipt of a written claim
and either pay into court the value of vessel and freight, or
transfer the owner's interest in the vessel and freight to a
trustee appointed by the court.  See Esta Later Charters, Inc. v.
Ignacio, 875 F.2d 234, 236 (9th Cir. 1989).  The court is then
able to adjudicate the claims, determining whether the vessel
owner is liable and whether the owner may limit liability.

On May 17, 2010, this court issued an order that
Plaintiffs had complied with Rules F(1) and F(2) of the
Supplemental Rules for Admiralty or Maritime Claims and Asset
Forfeiture Actions.  See ECF No. 10.  Plaintiffs now seek to

exonerate or limit their liability to $700,000, the purported
value of the vessel under LOLA.  See Am. Compl. ¶¶ 14-16.

LOLA does not provide an independent basis for
admiralty jurisdiction.  A court exercising jurisdiction over a
complaint seeking exoneration from or limitation of liability
must have independent admiralty jurisdiction over the underlying
tort giving rise to the limitation action.  See Seven Resorts,
Inc. v. Cantlen, 57 F.3d 771, 772-73 (9th Cir. 1995).

A party seeking to invoke federal admiralty
jurisdiction over a tort claim must satisfy conditions of both
location and connection with a maritime activity.  See Grubart,
Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531 (1995);
Gruver v. Lesman Fisheries, Inc., 489 F.3d 978, 982 (9th Cir.
2007).  The location test turns on whether: (1) the tort occurred
on navigable waters, or (2) the injury suffered on land was
caused by a vessel on navigable water.  Grubart, 513 U.S. at 534.
The connection test requires the court to (1) assess the general
features of the type of incident involved to determine whether
the incident has a potentially disruptive impact on maritime
commerce; and (2) ascertain whether the general character of the
activity giving rise to the incident shows a substantial
relationship to traditional maritime activity.  Id.  Admiralty
jurisdiction fails if one of the conditions cannot be satisfied.
See id.

A.          <u>Plaintiffs Fail to Satisfy the Location Test.</u>

Plaintiffs fail to prove the elements of the location test.  The first element is not satisfied because the alleged tort did not occur on navigable waters.  Mildred Winham was walking within the parking lot of Ma'alaea Harbor when she was hit by the truck Doty was driving.  The second element fails because the injury suffered on land was not caused by a vessel on navigable waters.  Doty's motor vehicle is not a "vessel on navigable water."

Plaintiffs argue that admiralty jurisdiction exists under the Admiralty Extension Act, 46 U.S.C. § 740, which extends admiralty jurisdiction to personal injuries caused by vessels on navigable waters but "consummated on land."  <u>See</u> <u>Christiansen v. Big Island Fish Connection, Inc.</u>, 885 F. Supp. 207, 210 (D. Haw. 1994).  Plaintiffs cite to several cases finding the location test satisfied when motor vehicle accidents occur on dry land. <u>See, e.g.</u>, <u>White v. Sabatino</u>, 526 F. Supp. 2d 1143, 1153-54 (D. Haw. 2007); <u>Duluth Superior Excursions, Inc. v. Makela</u>, 623 F.2d 1251, 1252-54 (8th Cir. 1980); <u>Thier v. Lykes Bros., Inc.</u>, 900 F. Supp. 864, 878-79 (S.D. Tex. 1995).  All but one of those cases involve intoxicated vessel crew members or passengers in "booze cruise" scenarios (i.e., situations in which persons become intoxicated while on vessels, leave the vessels still

intoxicated, and, in an intoxicated state, cause injuries to people on land).  The other case deals with a murder allegedly committed by a person who suffered a mental impairment attributed to an injury sustained while on a vessel.  See Crear v. Omega Protein, Inc., Civ. No. 99-420, 2002 WL 1941447 (E.D. La. Aug. 21, 2001).  These cases are distinguishable from the present action, which involves no shipboard act.

In the "booze cruise" cases, courts recognize admiralty jurisdiction because someone became intoxicated on board a vessel, meaning that the tort began on the vessel even though the injury occurred on land.  Because the tort occurred on a vessel in navigable waters, the locality test is met.

For example, in White v. Sabatino, 526 F. Supp. 2d 1143 (D. Haw. 2007), Sabatino, while a passenger on a cruise vessel, allegedly became intoxicated.  After getting off the vessel, Sabatino caused a motor vehicle accident that resulted in the victim's death.  The court examined whether the claims against the County of Maui's Department of Liquor Control fell within the court's admiralty jurisdiction.  The County had allegedly failed to properly monitor the dispensing of liquor on the vessel.  The court concluded that "the only logical situs of a failure to enforce a liquor regulation that prohibits serving of an unlimited amount of liquor . . . on a cruise vessel is on the vessel itself where the alcoholic beverages are served."  White,

at 1153-54.  Thus, the location of County's alleged tort was on the vessel itself.  Id. at 1154-55.

In Duluth, the court similarly found that the location test was satisfied because "the sequence of causal events started on board the vessel and ended on land."  623 F.2d 1251, 1254 (8th Cir. 1980).  In that case, an allegedly intoxicated passenger disembarked from the cruise boat, got in his car, and struck another passenger as he drove across the street.  Again, the serving of liquor on the cruise leading to intoxication met the location test standard.  See also Thier v. Lykes Bros., Inc., 900 F. Supp. 864 (S.D. Tex 1995) (finding admiralty jurisdiction because the chief officer who became intoxicated on board the vessel caused an automobile accident on land).  These "booze cruise" cases are inapplicable to the present action because no tort occurred aboard a vessel leading to an injury on land.

Courts have held that the location test is not satisfied in the absence of any connection to the vessel.  See, e.g., In re Madison Coal & Supply Co., Inc., 321 F. Supp. 2d 809 (S.D. W. Va. 2003) (finding a crew member who became intoxicated on land after leaving the vessel and killed another motorist did not meet the location prong since the tort did not occur on navigable waters); In re Complaint of Luhr Bros., Inc., 100 F. Supp. 2d 1156, 1159-62 (E.D. Mo. 2000) (finding a land-based motor vehicle accident caused when an off-duty vessel crew member

11

fell asleep while driving did not satisfy the location test);
Complaint of Nolty J. Theriot, Inc., 841 F. Supp. 209 (S.D. Tex.
1994) (holding that a motor vehicle accident occurring on land in
an ordinary nonmaritime activity about 20 miles from the waterway
and ship did not meet the location prong of admiralty
jurisdiction).  These cases seem to indicate that some occurrence
on the vessel must be causally linked to the injury to satisfy
the location test.  In the present action, the tort did not start
or relate to any occurrence on the vessel.  After leaving the
vessel, Doty drove his own truck to the pier the vessel was
moving to.  Doty planned to reboard the vessel there.  Doty
ignored the company van, which was available.  See Doty Depo. 80.
The accident was not related to any particular activity aboard
the vessel.  As there is no evidence that Doty was instructed or
required by the vessel to arrive in his own truck, it is
difficult to connect any movement of his truck to the vessel.
Plaintiffs thus do not satisfy the location test.

At the hearing, Plaintiffs claimed that they satisfied
the location test because Doty was on a "land-based errand" while
driving his truck from one pier to another.  According to
Plaintiffs, Doty's transit was in the service of the vessel, as
he was a vessel crew member performing his expected duties at the
time of the incident.  However, the record does not support the
theory of a "land-based errand" for the vessel.  Doty could have

12

just stayed on the vessel and gotten himself to the South Pier on the vessel.  Plaintiffs' explanation that Doty's land-based travel served the vessel by facilitating parking is also unpersuasive.  There is no evidence that Doty's supervisor requested or required him to drive his own vehicle, and there is no evidence that the vessel owned, controlled, or policed parking at the harbor.  If Doty was driving from one pier to another for his own personal convenience, or if he was freeing up parking at the North Pier for the Coast Guard or someone other than the vessel, it is unclear how his transit was in the service of the vessel.

At the hearing, Plaintiffs also urged the court to view any activity within the scope of a crewmember's employment as "in service of the vessel" and therefore as satisfying the location test.  This reading applies in certain Jones Acts claims and maintenance and cure claims.  Such claims concern an employee's personal injury or wrongful death.

The Jones Act grants seamen who suffer personal injury in the course of their employment the right to seek damages in a jury trial against their employers.  See 46 U.S.C. app. § 688.  Proof of the employer's negligence is essential to recovery under the Jones Act.  See Ribitzki v. Canmar Reading & Bates, Ltd., 111 F.3d 658, 662 (9th Cir. 1997).  A seaman can be in the course of his employment when he is injured on shore performing temporary

duties at the request of his employer.  See Rannals v. Diamond Jo Casino, 265 F.3d 442 (6th Cir. 2001).  See also Scheuring v. Traylor Bros., Inc., 476 F.3d 781, 785-86 (9th Cir. 2007); Cabral v. Healy Tibbits Builders, Inc., 128 F.3d 1289 (9th Cir. 1997).  Even when a seaman is on shore leave, he may be considered to be acting in the course of his employment.  See Sentry Select Ins. Co. v. Royal Ins. Co. of Am., 481 F.3d 1208 (9th Cir. 2007).  However, a seaman going about his own personal business activities, even on a vessel, is not considered to be in the service of his ship.  See McCledon v. OMI Offshore Marine Serv., 807 F. Supp. 1266 (E.D. Tex. 1992).

Maintenance and cure involves the right to food, lodging, and necessary medical service given by general maritime law to a seaman who is ill or injured while in the service of a vessel.  See Aquilera v. Alaska Juris, O.N. 569276, 535 F.3d 1007, 1009 (9th Cir. 2008).  The shipowner is obligated to pay the seaman's wages until the end of the voyage, as well as lodging and care thereafter, until the maximum cure attainable is reached.  Farrell v. United States, 336 U.S. 511, 517-19, 69 S. Ct. 707, 710-11, 93 L. Ed. 850 (1949).  A claim for maintenance and cure is much broader than a claim under the Jones Act because it is not dependent on the negligence of the shipowner.  Farrell, 336 U.S. at 516; Aguilar v. Standard Oil Co., 318 U.S. 724, 732. For maintenance and cure purposes, a seaman will be considered in

14

the service of his vessel if he is at a location for the convenience of his employer at the time of his injury.  See Smith v. United States, 167 F.2d 440 (4th Cir. 1948).  See also Williamson v. W. Pac. Dredging Corp., 441 F.2d 65 (9th Cir. 1971); Matson Nav. Co. v. Lawler, 217 F.2d 645 (9th Cir. 1954).

As the present case concerns the personal injury of a third party, and not of an employee, the analysis of the terms "in the scope of employment" and "in service of the vessel" as found in the Jones Act cases and maintenance and cure cases does not apply.  Even if the court were to apply the reading Plaintiffs urge, there is no evidence that Doty was acting in the scope of his employment or in service of the vessel when he drove to the other pier for what may have been his personal convenience.  See also Colon v. Apex Marine Corp., 832 F. Supp. 508 (D.R.I. 1993), judgment aff'd, 35 F.3d 16 (1st Cir. 1994) (finding that a seaman who was not performing an assigned duty was outside the course of his employment).

In a motion to dismiss, the party asserting jurisdiction must come forward with facts establishing jurisdiction.  Plaintiffs fail to meet this burden.  Indeed, Plaintiffs themselves have elsewhere denied that Doty was acting within the scope of his employment.  See Answer ¶ 13, ECF No. 24-6.  As Plaintiffs do not satisfy the location test, there is no admiralty jurisdiction.  The court need not rule on whether the

15

tort claim satisfies the connection test.

VI.     <u>CONCLUSION.</u>

For the foregoing reasons, the court grants the motion to dismiss.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 22, 2010




                              /s/ Susan Oki Mollway
                              Susan Oki Mollway
                              Chief United States District Judge


<u>In the Matter of The Complaint of Catamaran Holdings, LLC</u>, Civ. No. 10-00230 SOM/KSC; ORDER GRANTING CLAIMANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION.